IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEBORAH CLEVENGER, ) | |
| ) | |
| Plaintiff, ) | Case No: |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| A.M. CASTLE & CO., ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff, DEBORAH CLEVENGER, by and through her attorneys, the Law Offices of Colleen M. McLaughlin, and Osborne Employment Law LLC, complains of A.M. CASTLE & CO. ("Castle Metals" or "Defendant") and states as follows:

## INTRODUCTION

1. Plaintiff, Deborah Clevenger ("Plaintiff" or "Clevenger") alleges that her former employer Castle Metals has violated the Americans with Disabilities Act, 42 U.S.C. §12112 *et. seq* ("ADA") and the Family and Medical Leave Act, 29 U.S.C. § 2611 *et. seq* ("FMLA").

## JURISDICTION AND VENUE

2. The Parties entered into a tolling agreement which tolled Ms. Clevenger's ADA and FMLA statute of limitations beginning November 4, 2019. (Tolling Agreement, Ex. 1).

3. Settlement negotiations became futile on June 26, 2020.

4. On July 8, 2020, Plaintiff timely filed a Charge of Discrimination on the basis of association discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). (Exhibit 2, Charge of Discrimination).

1

5. On August 10, 2021, the EEOC issued a Right to Sue Notice (the "Notice") to Plaintiff. (Exhibit 2).

6. This Court may exercise federal question jurisdiction over the claims made pursuant to the ADA and the FMLA under the 28 U.S.C. §1331.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and § 1391(c) because the acts and omissions giving rise to the cause of action arose and occurred in the Northern District of Illinois.

## PARTIES

8. Ms. Clevenger is a resident of Warrenville, Illinois and a former employee of Defendant.

9. Castle Metals is a corporation with its principal place of business located at 1420 Kensington Road, Ste. 220, Oak Brook, Illinois 60523. Ms. Clevenger worked for the Defendant at this location during her entire employment with the Company.

## FACTS

10. Ms. Clevenger began working for Castle Metals on February 2, 2018 as a corporate credit representative.

11. In late August 2018, Ms. Clevenger learned that her husband was diagnosed with Pancreatic cancer.

12. She subsequently met with Corporate Credit Manager Russell Schommer and Thomas Gries about the diagnosis.

13. Immediately after informing these individuals of the diagnosis, her supervisors, and in particular Schommer, began treating Ms. Clevenger in a hostile and demeaning manner.

14. Immediately after notifying her supervisors of her husband's cancer, she was required to attend, for the first time in her employment, weekly meetings with Schommer and Gries critiquing her performance.

15. At first, Ms. Clevenger was allowed to work remotely at a cancer treatment center on Thursday and Friday, while working in the office Monday through Wednesday.

16. However, on or around October 30, 2018, she was informed by her supervisors that she would no longer be permitted to work remotely two days per week. She complained to HR and this accommodation was reinstated.

17. On December 10, 2018, Schommer presented Ms. Clevenger with a Performance Improvement Plan ("PIP").

18. This was the first form of discipline that Ms. Clevenger received during her employment.

19. Ms. Clevenger expressed to Schommer that she disagreed with the alleged deficiencies contained in the PIP and requested a meeting wherein HR would be present.

20. On December 11, 2018, Clevenger met with Schommer, Gries, and Erin Murphy (HR) in attendance via telephone.

21. In the middle of the conversation, Murphy was required to leave the meeting. As soon as the Human Resources employee left the conversation, Schommer and Gries became extremely rude and condescending to Ms. Clevenger.

22. There were three improvement goals listed on the PIP: (1) each identified past due account needs to be contacted minimum twice per week, (2) 3% reduction in the past due balance for the >15 total past due aging columns, and (3) weekly report submissions.

23. It was made clear at all PIP meetings that the most important goal was #2: reducing the past due balance for the >15 total past due aging columns by 3%. For example, in the PIP weekly meeting paperwork,

24. Schommer states in the PIP that "[t]he deciding goal on whether this PIP is successful or unsuccessful is contingent on the 3% reduction goal. Any reduction less than the 3% will result in an unsuccessful PIP."

25. Ms. Clevenger completed the first and third improvement goals, but she was unable to complete goal #2, the reduction goal. This goal, the first such reduction goal for both her department and for Ms. Clevenger in particular, was largely not within Ms. Clevenger's control.

26. There were two individuals directly responsible for reducing past due accounts: Ms. Clevenger, assigned to accounts in the Eastern region of the United States, and another co-worker (then Penny) for the Western region.

27. Despite only having responsibility for the accounts in the Eastern region, Ms. Clevenger was held responsible for reducing 3% of aging accounts in both regions.

28. This reduction goal was put on Ms. Clevenger in December, when her supervisors knew it is particularly difficult to reduce past due accounts.

29. In fact, the Company has historically allowed customers to pay invoices 30 to 60 days late during the holiday time period, which is a common practice in the industry.

30. The PIP required weekly meetings. The first follow-up meeting occurred on December 14, 2018, only *three days* after Clevenger received the initial PIP.

31. It notes that Ms. Clevenger had not reduced the past due accounts by 3%, and she had not contacted all past due customers twice per week yet (all in three days' time).

4

32. For two weeks during the PIP timeframe, Ms. Clevenger was assigned to cover for another employee's releasing orders duties. Schommer states in his weekly meeting notes that another employee, Debra Turnbo, was performing the follow-up collection activities, "so this portfolio (Clevenger's) is being worked daily."

33. Yet Schommer also commented that "Debbi needs to work on her daily productivity enhancements which allow her to contact more of the identified customers."

34. Thus, according to Schommer, despite her reassignment duties and her follow-up collection activities being performed by a co-worker (which she could not control), Ms. Clevenger was still being held accountable for meeting her call and reduction goals.

35. At the weekly meeting on January 4, 2019, after Ms. Clevenger again protested her being unable to meet this goal due to her working order releases.

36. Schommer acknowledged that the contacting customer goal 2x weekly was not feasible during Ms. Clevenger's temporary reassignment.

37. Schommer verbally promised that Ms. Clevenger would receive additional time, until January 17, 2019, to meet her PIP goals.

38. The promised extension did not materialize as Ms. Clevenger was terminated on January 10.

39. After the second PIP meeting, on December 27, 2018, Inside Sales Representative Susan Inman notified Ms. Clevenger that she was nominated for a Silver award for her work on the Loftis Steel account. The nomination was sent to Schommer for approval.

40. Despite the recommendation for the Company award, on information and belief, Schommer refused to approve the award. Ms. Clevenger was denied a well-deserved honor and any bonus associated therewith.

5

41. On January 8, 2019, Ms. Clevenger complained to Murphy that she was being disciplined because of her husband's illness (and Ms. Clevenger's relationship with him).

42. Despite the complaint about disability discrimination and retaliation, no one questioned Ms. Clevenger about this serious allegation.

43. On information and belief, Defendant conducted no investigation whatsoever into Ms. Clevenger's discrimination complaint. The Company appeared dead set on terminating Ms. Clevenger's employment.

44. On January 10, 2019, Gries and Murphy informed Ms. Clevenger that her employment was terminated due to not reducing her collections by 3%.

45. Finally, it should be noted that the individual in charge of collections in the Western region was not issued discipline or required to obtain the impossible-to-obtain 3% reductions in aging accounts.

46. Rather, Schommer singled out Ms. Clevenger to obtain the unobtainable 3% goal outside of Ms. Clevenger's control.

## COUNT 1: ADA EMPLOYMENT ASSOCIATION DISCRIMINATION

47. Plaintiff re-alleges and restates paragraphs 1-46 as if fully set forth herein.

48. Plaintiff was an "employee" as defined by the ADA. 42 U.S.C. § 12111(4).

49. Defendant was Plaintiff's "employer" as defined by the ADA. 42 U.S.C. § 12111(5).

50. Plaintiff's husband is an individual with a disability as defined by the ADA. 42 U.S.C. § 12102 (1).

51. Plaintiff has a relationship and/or association with her husband.

6

52. Defendant terminated Plaintiff due to her relationship and/or association with her husband suffering from his disability.

53. Further, Defendant discriminated against Plaintiff due to unfounded fears that Ms. Clevenger may be somewhat inattentive at work because the associated disabled individual required her attention.

54. Defendant's actions described above in paragraphs 1-46 constitute association discrimination against Plaintiff within the meaning of the ADA.

55. Defendant's actions were intentional, willful, and malicious and/or in deliberate indifference for Plaintiff's rights.

56. The actions of the Defendant against Plaintiff have caused her great mental anguish, emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other damages.

**WHEREFORE**, Plaintiff, Deborah Clevenger, respectfully prays that this Court enter an order granting Plaintiff the following relief:

   a. Reinstatement, or alternatively front pay;
   b. Back-pay;
   c. Actual damages incurred as a result of the discrimination;
   d. Punitive damages;
   e. Pre-judgment interest;
   f. Post-judgment interest;
   g. Litigation costs;
   h. Reasonable attorney's fees; and
   i. Such other and further relief as may be just in law and in equity.

## COUNT I1: ADA RETALIATION

57. Plaintiff re-alleges and restates paragraphs 1-46 as if fully set forth herein.

58. Plaintiff was an "employee" as defined by the ADA. 42 U.S.C. § 12111(4).

59. Defendant was Plaintiff's "employer" as defined by the ADA. 42 U.S.C. § 12111(5).

60. Plaintiff's husband is an individual with a disability as defined by the ADA. 42 U.S.C. § 12102 (1).

61. Plaintiff has a relationship and/or association with her husband.

62. On January 8, 2019, Ms. Clevenger complained to Murphy that she was being disciplined because of her husband's illness (and Ms. Clevenger's relationship with him).

63. In response, Defendant terminated Plaintiff two days later, due to Plaintiff's retaliation complaint.

64. Defendants' actions constitute retaliation against Plaintiff within the meaning of the ADA.

65. Defendant's actions were intentional, willful, and malicious and/or in deliberate indifference for Plaintiff's rights.

66. The actions of the Defendant against Plaintiff have caused her great mental anguish, emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other damages.

**WHEREFORE**, Plaintiff, Deborah Clevenger, respectfully prays that this Court enter an order granting Plaintiff the following relief:

j. Reinstatement, or alternatively front pay;
k. Back-pay;
l. Actual damages incurred as a result of the discrimination;
m. Punitive damages;
n. Pre-judgment interest;
o. Post-judgment interest;
p. Litigation costs;
q. Reasonable attorney's fees; and
r. Such other and further relief as may be just in law and in equity.

## COUNT III: FMLA INTERFERENCE AND RETALIATION

67. Plaintiff incorporates paragraphs 1-46 as though fully re-stated and set forth herein.

68. Plaintiff was an "eligible employee" under the FMLA, 29 U.S.C. § 2611 (2).

69. Defendant was an "employer" as defined under the FMLA, 29 U.S.C. § 2611 (4).

70. Plaintiff's husband had a "serious health condition" as defined under the FMLA, 29 U.S.C. § 2611 (11).

71. Even though Ms. Clevenger was not yet eligible for FMLA leave, her anniversary date was just weeks away when she was terminated. She was already being provided a work off site accommodation and her communications with Human Resources establish that the Company was well-aware she would need, and be entitled to take under the FMLA, additional accommodations/time off to care for her terminally husband after her one-year anniversary on February 2, 2019.

72. These facts bring Ms. Clevenger within the scope of the FMLA's anti-retaliation provision. *Reynolds v. Inter-Industry Conference on Auto Collision Repair*, 594 F.Supp.2d 925, 930 (N.D. Ill. 2009), *followed by Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269, 1274-76 (11th Cir. 2012).

73. Defendant interfered with Plaintiff's rights under the FMLA and retaliated against her by disciplining her and terminating her employment because of her leave requests.

74. Plaintiff suffered an adverse employment action, i.e. disciplinary action and termination in retaliation for requesting and using her statutorily protected FMLA right to leave because of her husband's serious health condition.

75. The actions of Defendant were intentional, willful, and malicious and in deliberate indifference for Plaintiff's rights.

98. As a result of Defendant's wrongful actions, Plaintiff has suffered lost wages and other employment benefits, emotional distress, and other damages.

**WHEREFORE,** Plaintiff, Deborah Clevenger, respectfully requests that this Court award all monetary and non-monetary amounts available under law including but not limited to:

a. Lost wages and benefits including back pay;
b. Reinstatement to the same or an equivalent position or front pay;
c. Actual damages;
d. Pre-judgment interest on all amounts awarded;
e. Post-judgment interest on all amounts awarded;
f. Liquidated damages;
g. Litigation costs;
h. Reasonable attorney's fees;
i. All other such relief as may be just in law and in equity.

**Plaintiff demands trial by jury.**

Dated: November 4, 2021

Respectfully submitted by:

*/s/ Quinton Osborne*
Attorney for Plaintiff

Colleen M. McLaughlin
Law Offices of Colleen M. McLaughlin
1751 S. Naperville Rd., Ste. 209
Wheaton, Illinois 60189
Telephone: (630) 221-0305
colleen@cmmc-employmentlaw.com
ARDC 3127466

Quinton Osborne
Osborne Employment Law
799 Roosevelt Road, Ste 3-201
Glen Ellyn, IL 60137
331-702-1538
ARDC 6319417
quinton@osborneemploymentlaw.com